

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **BRODERICK JAMAR LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:20-cv-01544-LSC** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Broderick Jamar Lewis ("Lewis" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Lewis timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Lewis was 34 years old at the time of his alleged onset date, and he completed high school. (*See* Tr. at 208, 256.) His past work includes experience as a sales

associate. (Tr. at 256.) Plaintiff claims that he became disabled on September 5, 2018. (Tr. 31, 103).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id*. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since September 5, 2018, the alleged date of the onset of his disability. (Tr. 31.) According to the ALJ, Plaintiff's bilateral tarsal coalition with triple arthrodesis, obstructive sleep apnea, and obesity are "severe impairments." (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 34.) The ALJ determined that Plaintiff has the RFC "to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (*Id.*)

According to the ALJ, Plaintiff is unable to perform any of his past relevant work. (Tr. 36.) The ALJ also determined that Plaintiff is a "younger individual age 18-44" at 34 years old, has at least a high school education, and is able to speak English, as those terms are defined by the regulations. (Tr. 37.) The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not

disabled,' whether or not the claimant has trasnferable job skills." (*Id.*) Because Plaintiff can perform the full range of sedentary work, the ALJ considered Plaintiff's RFC, age, education, and work experience, and used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Supart P, Appendix 2, to find that there are jobs in the national economy with a significant number of positions that Plaintiff is capable of performing. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 5, 2018, through the date of this decision." (*Id.*)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.   Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons: (1) the ALJ did not give proper weight to the opinions of treating physician, Dr. Paul, and failed to show good cause for doing so, (2) the ALJ's conclusion that Plaintiff's RFC included the full range of sedentary work was not supported by substantial evidence,[1] and (3) the ALJ improperly applied the pain standard. (Doc. 10 at 1-2.)

### A. Weight Given by the ALJ to the Opinion of Dr. Paul

To be found disabled, Plaintiff had to demonstrate that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe"

---

[1] Plaintiff also purports to have a fourth ground for reversal, that the ALJ's decision was not based on substantial evidence because of his reliance on Grid Rule 201.28 and inaccurate information posed in the hypothetical question to the VE. (Doc. 10 at 2, 46-47.) The Commissioner asserts that the argument Plaintiff makes on his second issue is duplicative of this fourth purported ground for reversal. (Doc. 11 at 26 n.14.) The Court agrees with the Commissioner and will address Plaintiff's relevant arguments in Section B below.

within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Lewis, as the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving he had a severe impairment, he thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability … ; there must be medical … findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment

that results from anatomical, physiological, or psychological abnormalities ….”); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ concluded that Plaintiff had three severe impairments: “bilateral tarsal coalition with triple arthrodesis, obstructive sleep apnea, and obesity.” (Tr. 31.) However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 34.) Based on the determinations that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the qualifying impairments, the Plaintiff's RFC, and the finding that there were jobs in significant numbers in the national economy that the Plaintiff could perform, the ALJ determined that the Plaintiff has not been under a disability since his alleged onset date of September 5, 2018. (Tr. 34-37.)

Plaintiff asserts that the ALJ failed to give the proper weight to the opinion of Dr. Dharam Paul, as Plaintiff's treating physician, and further erred in failing to provide good cause for doing so. (Doc. 10 at 1.)

New regulations came into effect in 2017, which govern this case. These new regulations provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare

that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings, with the most important factors being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. In considering supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* Similarly, in regard to the consistency factor, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors. *Id.*

In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In contrast, 20 C.F.R. §§404.1527 and 416.927, the regulations that govern for claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§404.1527, 416.927.

Plaintiff argues that the old rules apply to this case because the new rules do not supersede Eleventh Circuit precedent. (Doc. 18 at 4-8.) Plaintiff cites *Rose v. Saul*, a case out of the Eastern District of North Carolina, in which the court held that the new rules did not supersede Fourth Circuit precedent. No. 7:19-CV-91-BO,

2020 WL 4740479, at *3 (E.D.N.C. Aug. 14, 2020). The *Rose* court explained its holding as follows:

> The ALJ's assumption that the new SSA regulations supplanted Fourth Circuit case law rests on a fundamental misunderstanding of *Bird* and the cases that preceded it. *Bird* did not interpret a prior regulation, alterable by SSA. Rather, Bird followed a line of cases expounding on what is required from the ALJ to enable the Court to conduct its review.

*Id.*

The Court notes first that *Rose* is distinguishable because it considered a case dealing with a disability determination by another government agency, rather than an opinion by a treating physician, that the ALJ did not discuss at all in his opinion. *Id.* at *2-*3. In that case, the Department of Veterans Affairs ("VA") gave the Plaintiff a one hundred percent disability rating, and "the ALJ … did not mention— much less discuss—[Plaintiff's] 100% VA disability rating." *Id.* at *3. The ALJ's opinion in Plaintiff's case does not make the same error. The ALJ explained that he did not consider Dr. Paul's opinion in the Food Assistance application to be persuasive because "it is not consistent with the great weight of the overall record including the findings indicating improvement in his pain and his reported activities of daily living…." (Tr. 36.) Furthermore, the ALJ noted that Dr. Paul's evaluation was for a different program with different requirements than those the Social Security Administration uses to assess for disability and that the ALJ accounted for

Plaintiff's limitations that were supported by the record with his RFC limiting Plaintiff to sedentary work. (*Id.*)

Moreover, while Fourth Circuit precedent may establish the treating physician rule independent of the regulations, courts in the Eleventh Circuit have not reached the same conclusion. In one of the few Eleventh Circuit cases that mention this issue, the court stated, "For claims filed on or after March 27, 2017, … no significant weight is given to statements made by treating physicians as opposed to non-treating medical sources." *Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. 2021). The court went on to explain that even under the regulations that apply to claims filed before March 27, 2017, the ALJ could still reject the treating physician's opinion in certain circumstances when it was not supported by the evidence. *Id.* at 497.

Plaintiff also cites additional authority, including *Simon v. Comm'r, SSA*, 1 F.4th 908, 911 (11th Cir. 2021), *Delgado v. Comm'r of Soc. Sec.*, No. 20-14234, 2021 WL 4099237, *1 (11th Cir. Sept. 9, 2021), *Shakeel v. Kijakazi*, No. 4:20-CV-01131-CLM, 2021 WL 5827206, at *2 (N.D. Ala. Dec. 8, 2021), and *Duncan v. Kijakazi*, No. 1:20-CV-90-JTA, 2021 WL 6125788, at *1 (M.D. Ala. Dec. 28, 2021), in support of her argument (doc. 25 at 2, 4, 6-7), but in each of these cases, the Court was applying the prior regulations because Mr. Simon's claim was filed in March 2015,

Mr. Delgado's claim was filed in March 2016, Mr. Shakeel's claim was filed in June 2013, and Ms. Duncan's claims was filed in October 2016, all well before the new regulations went into effect. In both *Humber v. Comm'r of Soc. Sec.*, No. 2:20-CV-00501-JHE, 2021 WL 4409092, at *6 n.10 (N.D. Ala. Sept. 27, 2021) and *Mayfield v. Comissioner, Soc. Sec. Administrtaion,* No. 7:20-CV-01040-ACA, 2021 WL 5300925, at *4 (N.D. Ala. Nov. 15, 2021), the Court declined to resolve the question of which regulations apply because it found that the ALJ's analysis failed under either standard. In *Venable v. Kijakazi*, No. 4:20-CV-1741-AKK, 2021 WL 4894611, at *7 (N.D. Ala. Oct. 20, 2021), the Court determined that the new regulations applied because the Plaintiff's claim was filed in 2018. Accordingly, none of these cases cited by Plaintiff are persuasive, and the Court will apply the new regulations.

In examining the record in the present case, the Court found only one record of an assessment by Dr. Paul. That record consisted of a single-page evaluation for the Alabama Department of Human Resources Food Assistance Program. (Tr. 451.) On the evaluation form, dated May 21, 2019, Dr. Paul indicated that he did not believe that Plaintiff was mentally and/or physically able to work without restrictions based on his current medical condition. (*Id.*) Dr. Paul listed Plaintiff's medical conditions as bilateral ankle fusion, sleep apnea, hypertension, obesity, and mitral valve prolapse, and he listed the onset date for the listed conditions as March 1, 2010.

14

(*Id.*) Dr. Paul also indicated that he believed the condition was permanent and reduced Plaintiff's ability to financially support himself. (*Id.*)

The Commissioner argues that this one-page, check-box form is not a medical opinion that the ALJ was required to consider and that its statement about whether Plaintiff is able to financially support himself is an issue reserved for the Commissioner. (Doc. 11 at 19-21.) Even if the form did qualify as a medical opinion, the Commissioner asserts, the ALJ did not err because the ALJ's determination that the opinion was not persuasive was supported by substantial evidence. (*Id.* at 21-25.) The Court agrees.

The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activities and the ability to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The information in the form that Dr. Paul completed does not include any assessment of what Plaintiff is still able to do. (Tr. 451.) Nor does the form indicate refer to any impairment-related limitations or restrictions in the Plaintiff's abilities to perform work activities. (*Id.*) It merely expresses an opinion that Plaintiff cannot work without restrictions and that Plaintiff's ability to financially support himself is

limited due to his medical conditions without any discussion of any limitations or restrictions in actual work activities based on those conditions. (*Id.*) As such, the evaluation form completed by Dr. Paul does not meet the criteria for a medical opinion that the ALJ must consider.

In fact, because the form expresses an opinion on an issue reserved for the Commissioner, it is "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). The regulations list several types of evidence that they describe in this way and explain that "we will not provide any analysis about how we considered such evidence n our determination or decision" for such evidence. *Id.* Among those various categories are "[s]tatements on issues reserved to the Commissioner," which includes "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work." *Id.* Because Dr. Paul's evaluation form expresses the opinion that Plaintiff is not able to work without restrictions, it is statement on an issue reserved to the Commissioner and considered to be inherently neither valuable nor persuasive. Thus, the ALJ did not err in finding that the opinion expressed therein was not persuasive.

Even if Dr. Paul's opinion expressed in the evaluation form was a medical opinion that was not a statement on an issue reserved to the Commissioner, substantial evidence supports the ALJ's finding that the opinion was not persuasive.

The ALJ explained that he did not find this piece of evidence to be persuasive because it was not consistent with the overall record, including "findings indicating improvement in [Plaintiff's] pain and his reported activities of daily living." (Tr. 36.) While the ALJ did not specifically explain how he considered the "supportability" factor, as required by 20 C.F.R. § 404.1520c(b)(2), which would normally constitute reason for remand, the ALJ did state that he had "accounted for any possible limitations supported by the record by the limitation to sedentary work." (*Id.*) This statement indicates that the ALJ considered the supportability factor in relation to Dr. Paul's opinion and accounted for the limitations set forth in it. Furthermore, supportability is based on "the objective medical evidence and supporting explanations presented by a medical source," but the evaluation form completed by Dr. Paul provided neither. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). (Tr. 451.) It consisted entirely of conclusions, without any objective evidence or explanation. (*Id.*) The Court finds that the ALJ did not err in his conclusion that the opinion expressed by Dr. Paul in the evaluation form was not persuasive.

## B. Substantial Evidence for Plaintiff's RFC to Perform the Full Range of Sedentary Work

To be found disabled, Plaintiff had to demonstrate that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more

continuous months. *See* 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 404.1505. A claimant bears the burden of proving he was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a), (c); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ considered Plaintiff's disability claim using the five-step sequential evaluation process. To determine if Plaintiff could perform his past relevant work at step four or other work at step five, the ALJ had to first assess Plaintiff's RFC. An individual's RFC represents the most he can still do, despite his limitations, in a work setting. 20 C.F.R. § 404.1545(a)(1). In order to determine an individual's RFC, the ALJ assesses all of the relevant evidence in the record, including medical reports prepared by a physician or other healthcare provider, as well as more subjective descriptions and observations of an individual's limitations. *Id.* § 404.1545(a)(3). Moreover, the evaluator considers not only the impairments classified as severe but the limiting effects of all conditions when making a judgment about an individual's RFC. *Id.* § 404.1545(e). A reviewing court will affirm the ALJ's RFC assessment if it is supported by the objective medical evidence. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Plaintiff argues that the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence, and therefore the ALJ erroneously relied upon

Grid Rule 201.28 after providing inaccurate information in the hypothetical questions he posed to the VE. (Doc. 10 at 35, 46-47.) The Commissioner disagrees, arguing that substantial evidence supports the ALJ's determination of Plaintiff's RFC, that the ALJ properly relied on the Grids, and that testimony by the VE was not necessary. (Doc. 11 at 26-30, 37-39.) The Court agrees with the Commissioner.

The ALJ's decision was based on substantial evidence. After stating his finding of Plaintiff's RFC, the ALJ explained that in coming to the conclusion he did, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)." (Tr. 34.) The ALJ detailed his review of the medical evidence, methodically considering many appointments Plaintiff had and the findings of each. (Tr. 32-34.) He also considered Plaintiff's testimony and records and reports submitted by him. (Tr. 35-36.)

The ALJ considered evidence that indicated that Plaintiff's condition improved over time. In his opinion, the ALJ details a series of appointments that Plaintiff had at Northeast Orthopedic Sports Clinic and Physical Therapy where the notes show that his pain decreased and his strength increased over a period of three months. (Tr. 32-33.) At his initial evaluation on December 10, 2018, Plaintiff's

functional status required modified independence for basic care with severe symptoms. (Tr. 395.) Plaintiff rated his pain at the appointment at 2/10, with it going as low as 0/10 at its best and as high as 7/10 at worst. (Id.) Plaintiff exhibited a moderately antalgic gait. (Tr. 396.) Manual muscle testing ("MMT") was +3/5 in his left foot and 5/5 in his right. (Id.) His passive range of motion ("PROM") is his left foot was 5 degrees dorsiflexion, 20 degrees plantarflexion, 0 degrees eversion, and 5 degrees inversion. (Id.) In his right foot, his PROM was 20 degrees dorsiflexion, 60 degrees plantarflexion, 30 degrees eversion, and 60 degrees inversion. (Id.)

By his last appointment on February 11, 2019, Plaintiff's functional status still required modified independence for basic care, but he only showed moderate symptoms. (Tr. 436.) His pain severity at the appointment was still 2/10, going as low as 0/10 at best and only 5/10 at worst. (Id.) The MMT showed that Plaintiff's left foot was up to 4/5 and his right foot remained at 5/5. (Id.) His PROM in his left foot had increased to 10 degrees dorsiflexion, 30 degrees plantarflexion, 5 degrees eversion, and 10 degrees inversion. (Id.) The PROM in his right foot remained the same. (Id.)

The ALJ also considered evidence related to Plaintiff's obstructive sleep apnea. The ALJ observed that the evidence showed "no indication that the claimant

has complained of persistent or ongoing symptoms related to" his sleep apnea. (Tr. 35-36.) One of the records cited to by the ALJ was a visit to Dr. Shah on November 26, 2018, to be established as a new patient for his sleep apnea. (Tr. 36, 482.) The notes indicate that Plaintiff was diagnosed in 2013 and uses a CPAP when he sleeps but has no excessive daytime sleepiness or snoring and no history of asthma or hypertension.[2] (Tr. 482.) Furthermore, Plaintiff provided a compliance summary covering a period of six months from May to November in 2018. (Tr. 484.) That record shows Plaintiff used his CPAP every day during that period for an average of 8 hours and 14 minutes every night. (*Id.*) At no point did the Plaintiff sleep less than 4 hours during that time period, and he got up to 11 hours and 41 minutes of sleep. (*Id.*)

The ALJ also found Plaintiff's obesity to be a severe impairment. He noted that treatment records showed Plaintiff's weight as 258.1 pounds. (Tr. 36, 442,445.) Based on his review of the evidence, the ALJ concluded that Plaintiff's obesity "is not so severe as to prevent all ambulation, reaching, orthopaedic and postural maneuvers." (Tr. 36.) Still, the ALJ determined that Plaintiff's obesity, "in

---

[2] Other treatment records and testimony referenced by the ALJ indicate that Plaintiff did have hypertension. (Tr. 33-34, 442, 478.) The ALJ acknowledged this diagnosis, but the first mention of it in his review of the medical records was at an appointment on May 9, 2019. (Tr. 33.) The ALJ's review of the record indicated that Plaintiff improved with treatment and led him to conclude that the condition was non-severe. (Tr. 34, 478.)

combination with [his] bilateral tarsal coalition with triple arthrodesis reduce his ability to lift, stand climb, and walk. A reduction to only sedentary work is therefore warranted, and this is accounted for in the residual functional capacity." (*Id.*)

The ALJ also considered Plaintiff's statements about his daily activities. (Tr. 36.) In his function report, Plaintiff stated that he provided "99% of [the] care" for his wife and two children. (Tr. 245.) He also said that he would sometimes provide food and water for the family pet. (Id.) Plaintiff also indicated that he could lift up to 20 pounds and that his condition did not affect his ability to sit. (Tr. 249.) Plaintiff also reported that he was able to pay attention without issue, follow written and verbal instructions "very well," "handle stress okay," and adapt to changes in his routine. (Tr. 249-50.) The ALJ considered Plaintiff's own report of his activities of daily living to support his finding that the plaintiff could perform sedentary work. (Tr. 36.)

The Court agrees that, based on this evidence, substantial evidence supports the ALJ's RFC determination that Plaintiff can perform the full range of sedentary work. According to 20 C.F.R. §§ 404.1567(a) and 416.967(a),

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Plaintiff's function report stated he could lift up to 20 pounds, and his ability to sit was not affected by his impairments. (Tr. 249.) The records from the physical therapy after his surgery indicate reduced pain in his foot and increase strength and range of motion, suggesting Plaintiff would be able to do the occasional walking and standing required for sedentary work. (*See* Tr. 436.) Accordingly, the Court finds that substantial evidence in the record supported the ALJ's conclusion that Plaintiff could perform the full range of sedentary work.

Plaintiff also argues that the ALJ improperly relied on the Medical-Vocation Guidelines ("Grid") Rule 201.28 after posing an inaccurate hypothetical to the VE. (Doc. 10 at 46-47.) According to the Commissioner, the ALJ did not need to pose any questions to the VE because Plaintiff was able to perform the full range of sedentary work, so the ALJ was able to properly rely on the Grid. (Doc. 11 at 37.)

For the testimony of a VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of [Plaintiff's] impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ must pose a hypothetical question to the VE which comprehensively describes the Plaintiff's impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (holding that since the hypothetical question upon which the expert based his testimony failed to assume

the existence of psychological problems, which the ALJ found to be severe, the decision was not based on substantial evidence).

Here, the ALJ posed the following questions to the VE:

ALJ: Dr. Kessler, Mr. Lewis has a consistent 14-year work history with Walmart Corporation. He described in detail what he did, everything from unloading the stock room, cleaning out shelves, working up the freezers, loading, unloading trucks, things of this nature. Is there a corresponding Dictionary of Occupational Title for that particular job?

VE: Yes, Your Honor.

ALJ: What is it?

VE: It is retail stocker. That's 299.367-014. It is considered heavy work and it is semi-skilled with an SVP of 4.

ALJ: Anything transfer to sedentary?

VE: No, Your Honor.

ALJ: Given Mr. Lewis's vocational profile, what would be the acceptable level of absenteeism that a competitive employer like Walmart would tolerate prior to taking adverse action, including termination?

VE: Most employers will not tolerate more than one to perhaps one-and-a-half days per month. Anything above that would be considered excessive.

(Tr. at 57-58.)

Plaintiff argues that the questions posed by the ALJ were "not based on a correct or full statement of Claimant's limitations and impairments." (Doc. 10 at 46.) The Court agrees that the questions posed by the ALJ do not discuss Plaintiff's

limitations or impairments, but as the Commissioner asserts, "the ALJ permissibly relied on the vocation grids to determine [the plaintiff's] ability to adjust to other work in the national economy." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1307 (11th Cir. 2018); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1242–43 (11th Cir. 2004); SSR 83-11 (1983) WL 31252, at *1.

Once the ALJ determined that Plaintiff could perform the full range of sedentary work, he consulted the Grid. Rule 201.28 directs that a younger individual age 18-44, who is a high school graduate (or higher) and skilled or semiskilled with non-transferable skills, and can perform the full range of sedentary work, is not disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2. Because the Plaintiff met all of these qualifications, the ALJ did not err in applying Rule 201.28 to find Plaintiff to be not disabled without consulting with the VE.

### C. The ALJ's Application of the Pain Standard

Lewis broadly argues that that ALJ erred in evaluating his subjective complaints, but the only specific contention he makes in this regard is that the ALJ provided sufficient analysis by failing to state the reasons why he did not credit Plaintiff's subjective testimony. (Doc. 10 at 38-46.)

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584

(11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the Plaintiff's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the

Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not ... whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ noted that the impairments underlying Plaintiff's medical conditions could be reasonably expected to cause his alleged symptoms and functional limitations, satisfying the first part of the pain standard. (Tr. 35.) However, the ALJ found that Plaintiff's statements concerning the intensity,

persistence, and limiting effects of these alleged symptoms were not entirely credible by pointing to explicit evidence that was inconsistent with his subjective complaints. (Tr. 35-36.) The ALJ covered a variety of evidence to support his conclusion, including objective medical evidence and Plaintiff's subjective complaints. (*Id.*)

Plaintiff's claim fails for two reasons. First, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.'" *Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1211) (brackets from original quote omitted).  Second, although Plaintiff alleged at the hearing that he experienced a pain level of eight most of the time, at his physical therapy appointments, he consistently reported his worst pain being at level seven. (Tr. at 54, 400, 403, 405, 407, 409.) In fact, at his last few appointments, he stated his pain reached only level five at worst. (Tr. 412, 416, 420, 423, 426, 429, 432, 436.)

Second, the ALJ devoted several paragraphs to explaining why he did not believe that the Plaintiff's limitations were as severe as he claimed. (Tr. 35-36.) In a paragraph devoted to Plaintiff's arthrodesis of the bilateral feet, the ALJ described how Plaintiff's pain reports were not as severe as what he testified to at the hearing, as outlined above. (Tr. 35.) He further noted that treatment records indicate that his

28

symptoms were only moderate in severity, and while Plaintiff alleged difficulties walking, the medical records show only mild gait abnormalities by the conclusion of his physical therapy. (Tr. 35, 412, 416, 423, 426, 429, 432, 436.) As noted in Section B, *supra*, the ALJ also addressed Plaintiff's obstructive sleep apnea, noting that it did not appear to cause any disabling limitations, and Plaintiff's obesity in combination with his bilateral tarsal coalition, accounting for appropriate limitations in his RFC determination. (Tr. 35-36.)

The ALJ also discussed Plaintiff's subjective statements in his function report. (Tr. 36.) Plaintiff reported that he could lift up to 20 pounds, help care for his wife and children, provide food and water for their pet, and go shopping, even though he reported needing help to walk and stand. (Tr. 36, 244-251.) The ALJ explained that treatment records indicating improvements with treatment and Plaintiff's own reports of his activities of daily living supported the ALJ's conclusions. (Tr. 36.)

Nothing in the record indicates that the ALJ erred in his application of the pain standard, and the Court finds that the ALJ adequately explained his findings and referred to the medical evidence that he considered in reaching his conclusions. (Tr. 35-36.) For these reasons, Plaintiff's claim fails.

## IV.   Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 24, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728